Bruce **MASON**, Plaintiff–Appellant,

v.

**HUTTIG SASH & DOOR COMPANY RETIREMENT PLAN FOR SALARIED EMPLOYEES**, et al., Defendants–Appellees.

No. 00–5891.

United States Court of Appeals, Sixth Circuit.

Jan. 24, 2002.

Before BOGGS and GILMAN, Circuit Judges;  QUIST, District Judge.*

* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

QUIST, District Judge.

Plaintiff, Bruce Mason ("Mason"), appeals the district court's order granting Defendants' motion for summary judgment on Mason's age discrimination, retaliation, and pension vesting discrimination claims. We AFFIRM.

## I.

Defendant, Hutting Sash & Door Company[1] ("Huttig"), is a large national distributor of doors, windows, molding, trim, and other related building products. In September 1993, Mason, who was then fifty years old, was hired to work at Huttig's Knoxville branch as the manager of the installment replacement division. Mason was hired for the specific purpose of expanding the Knoxville branch's business through sales and installation of products to consumers (the "installed sales program"). Prior to that time, Huttig products were sold primarily to dealers, lumberyards, and contractors. Although some sales were made directly to consumers, Huttig did not sell installation services. Eventually, the installed sales program became part of the consumer direct program, which also targeted preexisting Huttig markets.

In June 1994, Mason was promoted to the newly-created position of manager of retail sales for the Knoxville branch. Mason was promoted in March 1995 to the position of regional sales manager. Mason's final promotion at Huttig was in November 1995 to the corporate-level position of director of retail sales. By that time, the consumer direct program had been expanded to several other branches. As the director of retail sales, Mason reported to the regional vice president and was responsible for the start-up of the consumer direct program at other branches, staffing of retail sales positions, and establishing sales and marketing plans. Mason also shared responsibility for the profitability of the consumer direct program and its day-to-day success.

In the latter part of 1997, Barry Kulpa ("Kulpa") became president and CEO of Huttig. In late 1997, Kulpa expressed his concern to Mason about whether Huttig should be involved in installed sales. On February 9, 1998, Mason began reporting to Gerald Grider ("Grider"), who became the regional vice-president as a result of a corporate reorganization. Grider met with Mason for the first time on February 18, 1998. During that meeting, Grider informed Mason that there were significant problems at several of the branches within the region which would have to be addressed quickly because Kulpa did not have the patience for a lengthy resolution. Grider mentioned, and Mason acknowledged, the fact that Kulpa had some concerns about the consumer direct business, specifically, the installed sales aspect. Grider also stated that due to his own lack of familiarity with the consumer retail business, he planned on meeting with the managers of the branches that had consumer retail programs to obtain their input. Grider told Mason that he anticipated meeting with Mason again in mid-March, at which time they would discuss the direction of the consumer direct program as well as Mason's role with the company, and that Mason should consider how his role in the company could be expanded and how he could be utilized in the process of addressing the problems.

The next discussion between Grider and Mason occurred by telephone on March 2,

---

1. The issues presented by Mason on appeal concern only his claims against his former employer, Huttig Sash & Door Company.

1998. During that conversation, Grider voiced several criticisms of the consumer direct program based upon his conversations with the branch managers. On March 5, 1998, Mason sent a lengthy letter to Grider and Dave Giffin, Huttig's vice-president of human resources, in which he responded to Grider's criticisms and defended his past performance with Huttig. Mason also raised, in a cursory manner, his concern that Grider might be trying to force Mason out of the company due to his age or to prevent Mason's pension from vesting.

Grider and Mason met again on March 19, 1998, for the purpose of discussing Mason's letter and his future role with Huttig. During that meeting, Grider told Mason that the decision had been made to "dismantle" the installed sales program and eliminate Mason's position and that there were no other positions available for Mason.

On or about March 25, 1998, Mason sent Giffin a letter confirming Mason's understanding that Mason was not terminated for cause and requesting that Huttig keep his termination confidential. In a letter written by Tom Tenhula ("Tenhula"), a human resources employee, Huttig confirmed Mason's understanding that he was not terminated for cause. Tenhula also mentioned that with respect to other opportunities at Huttig, Mason had limited himself in the past to the Knoxville area, but requested that Mason let Huttig know

if he had changed his mind. Mason never contacted Tenhula or anyone else at Huttig after receiving the letter.

## II.

This Court reviews a district court's grant of summary judgment de novo, using the same standard employed by the district court. *See Nat. Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir.1997). "Summary judgment is proper if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir.2001). "We consider all facts and inferences drawn therefrom in the light most favorable to the nonmovant." [2] *Id.*

Mason sought to establish his claim of age discrimination through the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff who is discharged in connection with a reduction in force can establish a prima facie case of age discrimination by showing that: (1) he was over 40 years of age at the time of his termination; (2) he suffered an adverse employment action; (3) he was qualified for the particular position; and (4) he was singled out on the basis of age, as demonstrated through additional direct, circumstantial, or statistical evidence. *Godfred-*

---

**2.** Mason argues that the district court erred in not disregarding all evidence that was favorable to Defendants and in failing to give credence to evidence favoring Mason as required by *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). This argument mischaracterizes the Court's decision in *Reeves*, which involved a motion for judgment as a matter of law under Rule 50 rather than a motion for summary judgment under Rule 56. *See id.* at 151. While it is true that the review stan-

dards under Rules 50 and 56 are similar, they are not the same. The question raised by a motion for judgment as a matter of law is whether a jury's verdict was supported by "legally sufficient" evidence. *Id.* at 149. In considering a motion for summary judgment, a court addresses the limited, preliminary question of whether the plaintiff has produced sufficient evidence to create a genuine issue of material fact for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*son v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir.1999) (quoting *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir.1998)). Mason attempted to establish the fourth element of his prima facie case by presenting evidence that Huttig allowed younger, similarly situated employees in the consumer direct program either to remain in the program or to transfer to other positions within Huttig. The district court concluded that Mason's evidence was insufficient to establish a prima facie case because Mason and the younger employees with whom Mason sought to compare himself were not similarly situated in all relevant aspects of their employment.

After reviewing Mason's evidence, we conclude that the district court correctly determined that Mason's comparables were not similarly situated to Mason. Mason held a corporate-level position that was at least two levels above all other positions in Mason's group, which were all branch-level positions, Mason had a significantly broader level of responsibility than other consumer direct group employees, and Mason was paid substantially more that the other employees. These differences were sufficient to render the younger employees dissimilar to Mason under our decision in *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir.1998). The district court also correctly held that Mason's evidence of age-biased atmosphere at Huttig was insufficient to establish the fourth element of a prima facie case as the evidence was either irrelevant or too remote to raise an inference of an age-biased atmosphere. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1125 n. 7 (6th Cir.1998); *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir.2000).

We also conclude that the district court properly granted summary judgment on Mason's retaliation claim because Mason failed to establish a prima facie case of retaliation. *Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 412 (6th Cir. 1999). Specifically, Mason failed to establish a causal connection between protected activity and the adverse employment action because the evidence showed that Mason knew his position was in jeopardy several months before Mason wrote his March 5 letter purportedly accusing Huttig of age discrimination. While it is true that "proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection," *Moon v. Transp. Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir.1987), "temporal proximity alone is insufficient to establish a causal connection for a retaliation claim." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363–64 (6th Cir.2001). Here, other than temporal proximity, there is no evidence showing a causal connection.

Finally, we conclude that summary judgment was proper on Mason's pension vesting claim under Section 510 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1140. Mason failed to present evidence showing that interference with Mason's pension rights was a motivating factor in Huttig's decision to terminate Mason's employment. *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir.1997). In addition, Huttig's evidence provided an adequate explanation for why Mason was not retained as long as were other lower-level consumer direct employees.

### III.

Accordingly, the district court's judgment is **AFFIRMED.**